JOHN CREEN, Master, ET. AL., v. E. FRANCISCO CROCE, ET. AL., E. A. CROCE, Master of Orozimbo, v. TOWBOAT VANDERBILT, ET AL. (CONSOLIDATED CASES.)

Where a witness is merely a nominal party to the suit, and disclaims any personal interest therein, he is competent.

A towboat's private book of rules and regulations cannot be received in evidence even when accompanied by oral testimony.

Any accident, except such as impossible to be foreseen or avoided, that may happen to any steamboat from running into or afoul of another boat; or, whenever an accident happens from the boat being overloaded, the owner of the boat causing such accident shall be responsible for all loss and damage as a common carrier, and also subject to fine and imprisonment.

APPEAL from the Fourth District Court of New Orleans, *Allen,* J.

*E. Rawle,* for plaintiffs. *Gilmore,* for Hyde & Mackie, appellants. *William D. Hennen,* for Ship, *et als.*

*Rawle for plaintiff.*—The captain of the Vanderbilt was wrong in attempting to execute a manœuvre which was improper and dangerous. *The Thames,* 5 Rob. Ad. 345. *The Shannon,* 2 Haggard, 173.

It is for the owners of the steamer to prove that the collision could have been avoided. *Betoso* v. *U. S. Mail Co.,* 9 An. 268. *Martino* v. *Boggs,* 1 An. 75. *Sparks* v. *Salladin,* 6 Ann. 764.

This is an aggravated case, and there should have been no appeal. Damages may be justly given, as prayed for.

*Gilmore for Hyde & Mackie.*—The master of the Digby sues the owners of the Orozimbo, and Hyde & Mackie, whom he alleges to be the owners of the Vanderbilt, for damages suffered by the collision.

The owners of the Orozimbo also sue the Vanderbilt for damage alleged to have been suffered by that ship. Both suits have been tried together.

As against the Vanderbilt, it is, of course, alleged that the collision was occasioned by negligence and want of proper skill on the part of the officers and crew of that vessel.

This is the gist of the action, and it is incumbent on the plaintiffs to establish it.

If the collision was not occasioned by the fault or negligence of the officers and crew of the Vanderbilt, or if it was the result of accident, which ordinary diligence could not prevent, or of mutual fault, or if by proper care and management on the part of one, or both of the colliding ships it could have been avoided, then the appellants are not liable.

Lord Tenderden, in two cases, at Nisi Prius, has laid down the doctrine of the common law applicable to cases of damage by a collision of vessels, where the damage has been in consequence of mutual negligence.

In *Vanderplanck* v. *Miller,* which was a "running down" case, that learned judge, in summing up to the jury, said :—"If there was want of care on both sides, the plaintiffs cannot maintain their action ; to enable them to do so, the accident must be attributable entirely to the fault of the crew of the defendants." On another occasion, at Nisi Prius, in an action for the negligence of defendant's servant in managing his barge, whereby the plaintiff's barge was run down and sunk. Lord Tenderden

CREEN ET AL.
v.
CROCE ET AL.

said : "The plaintiff, in this case, complains of an injury to his barge through the negligence of the defendant's servants. If the accident happened from the state of the tide, or from any other circumstances which persons of competent skill could not guard against, the plaintiff is not entitled to recover; and so if the plaintiff's men had put this barge in such a place that persons using ordinary care would run against it, the defendant will not be liable. Nor will he be liable if the accident could have been avoided, but for the negligence of the plaintiff's men in not being on board his barge at the time when it was lying in a dangerous place. The only case in which the defendant is answerable is, if the accident arose from the negligence or want of skill in his own men." In an action in the Exchequer, for running down a vessel, Bayley, B., said : "The rule is, that the plaintiff could not recover if the ship were in any degree in fault, in not endeavoring to prevent the collision. Here the plaintiff had a right to presume that the defendant's ship would do that which she ought to do. I quite agree that if the mischief be the result of the combined negligence of the two, they must both remain in *statu quo*, and neither party can recover against the other." Angell on Carriers, ₵ 635.

Lord Tenderden, in his Treatise on Shipping, says : "Two things must concur to support this action : a collision by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."

Abbott on Shipping, Boston edition of 1846; p. 312.

This is the settled doctrine of the American courts, and, as such, has been recognized and affirmed by our own Supreme Court in a series of decisions.

*Carlisle* v. *Holton*, 3 An. 48 and cases cited.

*Murphy* v. *Diamond*, 3 An. 441.

*Myers* v. *Perry*, 1 An. 382.

*Edgell* v. *Barrataria & Lafourche Canal Co.*, 6 An. 425.

Professor Parsons says : "We take a common carrier to be one who offers to carry goods for any person between certain termini or on a certain route ; and he is bound to carry for all who tender to him goods and the price of carriage, and insures those goods against all loss but that arising from the act of God or the public enemy ; and has a lien on the goods for the price of carriage. These are essentials ; and though all or any of them may be modified, and, as we think, may be controlled, by express agreement, yet, if either of these elements is wanting from the relation of the parties, without any such agreement, then we say the carrier is not a common carrier, either by land or water." Maritime Law, p. 174, vol. 1.

In *Caton* v. *Rumney*, 13 Wendell, 387, and in *Alexander* v. *Greene*, 3 Hill 1, it was expressly decided that steam towboats are not common carriers. See *Smith* v. *Pierce*, 15 La.; *Davis* v. *Housen*, 259, 6 Rob.

So in *Wells* v. *Steam Nav. Co.*, 2 Comst. 204.

*Leonard* v. *Henderson*, 18 Penn. 40.

See, also, Story on Bailments, ₵ 496.

Angell on Carriers, ₵ 86.

Those who, as a public employment, undertake the carriage of inanimate objects, either by land or water have the object bailed exclusively

in their own possession, and under their own power and control—out of the view and custody of its owner—therefore, it is but reasonable that they should be held to strict care and strict accountability. Lord Holt, in the celebrated case of *Coggs* v. *Bernard*, says : " The law charges this person, thus entrusted to carry goods, against all events, but the acts of ·God and of the enemies of the king. For, though the force be never so great as if an irresistible multitude of people should rob him, nevertheless he is chargeable. And this is a politic establishment, contrived by the policy of the law for the safety of all persons, the necessity of whose affairs obliges them to trust to these sort of persons, that they may be safe in their dealings. For, else, these carriers might have an opportunity of undoing all persons that had any dealings with them, by combining with thieves, etc., and yet doing it in such a clandestine manner as would not be possible to be discovered. And this is the reason the law is founded upon in that point." Story on Bailments, § 490.

The carrier is a bailee for hire, and it is of the essence of the contract of bailment that the object bailed should be delivered. Story on Bailments, § 2.

*Hennen for Ship et als.*—The obligations of the owners of towboats to shipowners, are those of *common carriers*. *Smith et als* v. *Pierce et als.* 1. L. 354–5.

The Court says : " By the contract for towing, he is bound to carry them safely to their destination, *unless* prevented by UNCONTROLLABLE ACCIDENTS, or such as are not within the CONTROL OF HUMAN FORESIGHT OR POWER."

The undertaking is to tow the vessel in safety, and he has a right to assume all the authority necessary to effect that purpose. The command and care of the vessel towed should either be subject to his command whilst she is carried by his boat, or her rudder should be placed in ·the *hands of one of his own men.* We consider a vessel thus towed *as property carried for hire*, in which her crew should not be viewed as having any lawful agency.

They had, as *common carriers*, the entire control over the Orozimbo ; that if there was any misconduct or neglect on her (which is denied and disproved by the evidence), it is the act of the *common carrier*. See *Smith* v. *Pierce*, 1 L. 357.

ILSLEY, J. These two cases were tried together in the lower court, almost on the same evidence adduced in each.

The facts are correctly stated by the Judge of the Fourth District Court of New Orleans, and are as follows :

On the 6th of. January, 1859, whilst the ship Digby was attempting to cross the bar, at the South West Pass, under sail, she grounded on the bar, and whilst so aground, the towboat C. Vanderbilt, having in tow astern the ship Orozimbo, attempted to pass the Digby, which was lying across the channel, and in so doing the Orozimbo was brought into collision with the Digby, whereby both the Digby and Orozimbo were seriously damaged. The owners of the Digby claim, that the collision was occasioned by the fault and neglect on the part of the officers and crews in charge of both of the Orozimbo and the towboat Vanderbilt, whilst the

owners of the Orozimbo claim that the collision was attributable to the fault of the Digby and the Vanderbilt, thus presenting (as the Judge appropriately observes) a species of triangular crimination.

Two separate judgments were rendered in the lower court; one in the suit of *John Creen, Master, &c.*, v. *E. Francisco Croce, et al.*, and the owners of the Digby against *Hyde & Mackie*, owners of the Vanderbilt, *in solido*, for the sum of $613, with interest and costs, and in the same suit in favor of *E. Francisco Croce*, master and owners of the ship Orozimbo, also defendants therein, discharging them from liability, and the other judgment in the suit of *E. F. Croce, Master, et al.* v. *The Vanderbilt et als.*, in favor of the plaintiffs for $955, with interest and costs.

*Hyde & Mackie* took a suspensive appeal from both judgments, and it was agreed that one transcript should serve both appeals, and that the case as between *Creen & Croce*, the Digby and the Orozimbo, should be examined and decided apart by this court without a formal appeal on the part of the former, and in the same manner as if an appeal had been regularly taken.

Before proceeding to an examination on the merits of these consolidated cases, we will dispose of two bills of exception, taken by *Hyde & Mackie* to the reception and rejection of certain evidence on the trial of these cases.

The first was to the overruling of the objection made by them to the evidence of *John Creen*, on the ground that he was the party-plaintiff to the record in his suit against them, and as such liable for the costs of suit.

As a general rule, the objection would have certainly been a valid one; but as the witness was merely a nominal party to the suit, and disclaimed any personal interest therein, we do not think such an objection could deprive the real parties in interest of the benefit of his testimony, and the Judge of the lower court did not err in receiving it.

The second bill of exceptions was, to the refusal of the court to receive in evidence a certain private book, made a part of the bill, in connection with the testimony of Captain Smith, that the same contained the rules and regulations of the several towboat companies, with regard to their charges and responsibilities, and also to prove that said books were extensively circulated and were well known to the commercial community, particularly to those engaged in the Shipping business. For the reasons stated in the bill, and in accordance with the ruling of Mr. Justice Story, in the case of the schooner *Reeside*, 2 Sumner 567, the said book and explanatory evidence was properly rejected.

On the merits, the evidence in these cases, as is usual in kindred cases, is conflicting; but, after a very careful examination of the whole evidence in the record, it is, we think, satisfactorily shown, that the collision between the Digby and the Orozimbo was not occasioned by *force majeure*, but by the fault, negligence, carelessness, unskilful management and obstinacy of the master of the Vanderbilt, who, regardless of the peril of attempting to pass the Digby, with a ship in tow astern, which was held by a hawser of some forty fathoms long, nevertheless, in spite of repeated warnings and remonstrances from persons on the Digby and the Orozimbo, persisted in making the attempt, as appears by the combined testimony of *Creen, Patterson, Ferris, Daws* and *Jackson*. Had the master of

the Vanderbilt let go the hawser which held the Orozimbo to his vessel, as he was requested and urged to do by the pilots of both boats, or stopped when only at the distance of one hundred and fifty yards, the accident would not have happened. See evidence of *Jackson*.

The danger of an imminent collision should have been manifest to an experienced navigator. The channel was very narrow, and the sheer taken by the Orozimbo in the eddy, naturally resulting from the Digby's position in the channel, was the natural result of the reckless attempt made by the Vanderbilt. Had the master of the Vanderbilt, even when the danger of collision became imminent, displayed ordinary skill as a navigator, the collision might still have been averted. He controlled the situation, and had he cast off the hawser, or anchored in time, no collision would have taken place.

Neither the Digby nor the Orozimbo were to blame for the collision; for, as the Judge of the lower court properly observed, the Digby had the right to come on to the bar with either sail or steam, at her option, and no law or regulation exists to control her in this respect. She being aground was her misfortune; but as she was in that condition and entirely helpless, it was the bounden duty of all other vessels to do her no harm. See *Sauvé* v. *Beckwith*, 9 La. 430; Story on Bailments 386.

As to the Orozimbo, she was merely a passive agent, with no present motive power save that received from the Vanderbilt, and made repeated attempts to be cut loose from her.

The case of *Bestoso* v. *U. S. Mail Co.*, 9 Ann. 268, establishes the principle by which a case like this should be governed.

If the accident was an unavoidable one, with due precautionary measures, it was incumbent on the defendants, *Hyde & Mackie*, to show this exculpatory fact; but, on the contrary, the record is full of proof that the whole damage inflicted on the Digby and Orozimbo, was occasioned by the wilful obstinacy, fault and negligence of the master of the Vanderbilt. *Saurie* v. *Tourne & Beckarts*, 9 La. 428.

The cases are fully made out, and the defendants, *Hyde & Mackie*, who are proved to have been the owners of the Vanderbilt when the collision occurred, are responsible, as common carriers, to each vessel for the damage sustained by it. See Art. 2294, C. C.; *Smith et al.* v. *Pierce et al.*, 1 La. 350; *Davis* v. *Housen*, 6 Rob. 256; *Millaudon* v. *Martin*, 6 Rob. 541; *Burges* v. *Beebe*, 3 An. 668. See Acts of State Legislature, 1855, R. S., sec. 1, p. 537.

The master and owners of the Orozimbo were properly exonerated from all liability to the Digby, as they were in no way to blame for the collision with that vessel.

It is therefore ordered, adjudged and decreed, that the judgments rendered in the suit, *John Green, Master, &c.*, v. *E. Francisco Croce*, and in that of *E. A. Croce, Master, &c.*, v. *Towboat Vanderbilt*, consolidated, be, and the same are hereby affirmed, the costs of appeal to be paid by *Hyde & Mackie, in solido*.

JONES, J., absent.